**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Andrew Schrode, individually and on behalf of
all others similarly situated,

                      Plaintiff,

           - against -

Arizona Beverages USA LLC,

                  Defendant

1:21-cv-03159

First Amended Class
Action Complaint

Jury Trial Demanded

       Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff,
which are based on personal knowledge:

       1.     Arizona Beverages USA LLC ("defendant") manufactures, markets, labels and sells
combinations of half iced-tea and half-lemonade (an "Arnold Palmer"), represented as having
"Zero [Calories]" and "No Calories," under the Arizona brand ("Product").



2.      The statements, "Zero" and "No Calories" tell consumers the Product will not have any calories.

3.      Zero is defined as "a state of total absence or neutrality" and refers to "arithmetical symbol 0 or 0′ denoting the absence of *all* magnitude or quantity." (emphasis added).[1]

I.   Consumers Seek to Reduce Calorie Consumption

4.      Due to awareness of harms from excess calorie intake, consumers are increasingly purchasing foods which contain less calories.

5.      Calorie and sugar reduction are inextricably linked, as sugar is a source of calories.

6.      Many consumers seek to avoid calories, especially "empty" calories consumed through beverages.

7.      Reasonable consumers "clearly link sugar to calories," and expect a food or beverage with no calories will not have any sugar. N.J. Patterson et al., "*Consumer understanding of sugars claims on food and drink products*." Nutrition bulletin 37.2 (2012): 121-130.

8.      By consuming foods with less or no calories – due to less or no sugar – consumers can potentially avert "numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[2]

9.      As "sugar avoidance [is] a macro trend 'that is here to stay and will only increase,'" companies have sought to promote products with less sugar, because such products would necessarily have fewer calories.[3]

---

[1] Merriam Webster, Zero.
[2] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[3] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018

10.     Surveys confirm that a growing number of consumers are buying products with less sugar to decrease their caloric intake, and "85% are doing so for health reasons and 58% for weight concerns."[4]

II.  "Zero Calories" and "No Calories" are Nutrient Content Claims

11.     Representing a food or beverage as having zero or no calories is a nutrient content claim. 21 C.F.R. § 101.60(a).

12.     Congress required the FDA to develop and implement nutrient content claims to prevent consumers from being misled by the endless terms and descriptors on labels.[5]

13.     FDA regulations, adopted by Illinois, provide "general principles" for nutrient content claims, which are fleshed out in other regulations. 21 C.F.R. § 101.13; 21 C.F.R. §§ 101.54-101.69 ("Subpart D – Specific Requirements for Nutrient Content Claims").[6]

14.     The terms, descriptors and criteria for nutrient content claims were the outcome of dozens of meetings held by the FDA with consumers across the country.

15.     Nutrient content claims for calories are intended to prevent consumers being deceived by labels which make representations about their calorie content that are not true. 21 C.F.R. § 101.60(b) ("*Calorie content claims.*").

16.     Products that are labeled as "'no calories,' [or] 'zero calories," are permitted, provided certain criteria are met. 21 C.F.R. § 101.60(b)(1).

17.     Specifically, a food must "contain[s] less than 5 calories per reference amount customarily consumed and per labeled serving" to be represented as "zero calories" or "no

---

[4] *Id.*
[5] Nutrition Labeling and Education Act, Public Law 101-535, 104 Stat 2353; 21 U.S.C. § 343(r)(2)(A).
[6] *See* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (incorporating 21 C.F.R. Part 101).

calories." 21 C.F.R. § 101.60(b)(1)(i).

    18.    Otherwise, manufacturers could arbitrarily decrease the serving size so that it would contain less than five calories, and then advertise it as containing "zero calories."

    19.    The Product's Nutrition Facts indicate it has zero calories, based on a serving size of eight fluid ounces (fl. oz.), and that it has approximately three servings (23 oz).



    20.    The reference amount customarily consumed ("RACC") for non-carbonated beverages is 12 oz (360 mL).

    21.    The 23-oz can is 192 percent of the RACC and meets the definition of a single-serving container. 21 C.F.R. § 101.9(b)(6).

    22.    Federal regulations permit "amounts less than 5 calories [to] be expressed as zero" in the Nutrition Facts. 21 C.F.R. § 101.9(c)(1).

    23.    This means that presuming eight ounces contain less than five calories, listing "0" calories on the Nutrition Facts is permitted.

24. However, the RACC for the Product is the entire 23 oz-can, which does not contain less than five calories.

25. This fact is concluded because the Product is sold in what appears to be two versions.

Version 1                    Version 2



26. Both Nutrition Facts correspond to the identical 23-oz product with identical ingredients.

27. The Nutrition Facts on the left shows five calories per serving of 12 ounces.

28. According to reports, the FDA required Defendant to cease representing the Product as containing "Zero Calories" and "No Calories."

29. Defendant now sells the identical product but labeled as "Diet," which contains 15 calories per can, indicated in the left column.

III. "Dual Column" Nutrition Facts is Misleading

30.    The Product's revised Nutrition Facts is misleading because it uses "dual columns," which presents consumers with the number of calories "per serving" (5) ("12 oz") and "per container" (15) (23 oz).

31.    Research demonstrates that package and portion sizes have a considerable impact on the amount of food consumed.

32.    Presenting Nutrition Facts with dual columns causes consumers to expect they will only consume half of the can.

33.    However, evidence and studies show that consumers will generally consume an entire beverage when it is packaged and presented in a size such as the 23-oz can.

34.    While a consumer may hope to consume part of the bottle – 5 calories – evidence suggests otherwise, and they will consume the entire can – 15 calories.

35.    By presenting the Nutrition Facts with dual columns, format, it is inconsistent with the information required to maintain healthy dietary practices.

36.    21 C.F.R. § 101.9(b)(6) requires that "the entire content of the product must be labeled as one serving."

37.    While 21 C.F.R. § 101.9(b)(6) permits "an additional column that lists the quantitative amounts and percent Daily Values per common household measure that most closely approximates the reference amount," this does not apply to single-serving beverage containers like the Product. *See* 21 C.F.R. § 101.9(b)(5)(iv) (defining "common household measure" as "A description of the individual container or package shall be used for single serving containers"); *see also* FDA, Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion; Dual-Column Labeling; Updating, Modifying, and Establishing Certain

6

Reference Amounts Customarily Consumed, Feb. 2018 ("For single-serving containers and individually packaged products within multiserving containers, the common household unit must be a description of the individual container or package, such as can, box, or package (21 CFR 101.9(b)(5)(iv)).").

38.    The Product contains other representations which are false and misleading.

39.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

40.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

41.    Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

42.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

43.    The Product is sold for a price premium compared to other similar products, no less than $1.49 per 23-oz can, higher than it would otherwise be sold for, absent the misleading representations and omissions.

<p align="center">Jurisdiction and Venue</p>

44.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

45.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

46. Plaintiff Andrew Schrode is a citizen of Illinois.

47. Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, Nassau County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

48. Venue is proper because plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

<u>Parties</u>

49. Plaintiff Andrew Schrode is a citizen of Hickory Hills, Cook County, Illinois.

50. Defendant Arizona Beverages USA LLC, is a New York limited liability company with a principal place of business in Woodbury, New York, Nassau County.

51. Defendant is one of the largest sellers of iced tea beverages in the country.

52. Defendant's products, including the Product in this action, are sold to consumers by third-parties, available online and in almost every convenience store, grocery store, big box store, drug store within the nation, and in Illinois.

53. Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including in 2020 and 2021, from stores including Walgreens, 8800 West 95th Street Hickory Hills IL 60457.

54. Plaintiff relied on the front label statements that the Product had zero calories and no calories.

55. Plaintiff chose between Defendant's Product and other similar products which were represented as zero calories and *had* zero calories, instead of zero calories based on an inaccurate serving size.

56. The Product was worth less than what Plaintiff paid and he would not have paid as

much absent Defendant's false and misleading statements and omissions.

57.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its capabilities and features.

<div align="center">Class Allegations</div>

58.    The class will consist of all Illinois, Ohio, Texas, Virginia, Rhode Island, Delaware and Florida residents who purchased the Product during the statutes of limitations for each cause of action alleged.

59.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

60.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

61.    Plaintiff is an adequate representative because his interests do not conflict with other members.

62.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

63.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<div align="center">Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</div>

<div align="center">(Consumer Protection Statute)</div>

66.    Plaintiff incorporates by reference all preceding paragraphs.

<div align="center">9</div>

67. Plaintiff and class members desired to purchase a product which had zero calories, not zero calories based on a serving size that was inapplicable.

68. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70. Plaintiff relied on the representations.

71. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<div align="center">
Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>
</div>

72. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was had zero calories, not zero calories based on a serving size that was inapplicable.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based on Defendant's outsized role in the market for this type of Product – a leading seller of ready-to-drink iced tea beverages.

75. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

76. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

77. The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

78.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

79.    Defendant had a duty to truthfully represent the Product, which it breached.

80.    This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

81.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

82.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

83.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

84.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that had zero calories, not zero calories based on a serving size that was inapplicable

85.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities.

<u>Unjust Enrichment</u>

86.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<div align="center">Jury Demand and Prayer for Relief</div>

Plaintiff demands a jury trial on all issues.

    **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 16, 2021

<div style="margin-left:40%">
Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com
</div>