# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Andrew Schrode, individually and on behalf of all others similarly situated, | 1:21-cv-03159 |
| Plaintiff, | |
| - against - | Second Amended Class Action Complaint |
| Arizona Beverages USA LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.　　Arizona Beverages USA LLC ("defendant") manufactured, marketed, labeled, and sold combinations of half iced-tea and half-lemonade ("Arnold Palmer"), represented as having "Zero [Calories]" and "No Calories," under the Arizona brand ("Product").

2.　　The statements, "Zero" and "No Calories" tell consumers the Product will not have any calories.

3.　　Zero is defined as "a state of total absence or neutrality" and refers to "arithmetical symbol 0 or 0 denoting the absence of *all* magnitude or quantity." (emphasis added).[1]

4.　　Due to awareness of harms from excess calorie intake, consumers are increasingly purchasing foods which contain fewer calories.

5.　　Calorie and sugar reduction are inextricably linked, as sugar is a source of calories.

6.　　Many consumers seek to avoid calories, especially "empty" calories consumed through beverages.

---

[1] Merriam Webster, Zero.

7.     Reasonable consumers "clearly link sugar to calories," and expect a food or beverage with no calories will not have any sugar. N.J. Patterson et al., "*Consumer understanding of sugars claims on food and drink products*." Nutrition bulletin 37.2 (2012): 121-130.

8.     By consuming foods with less or no calories – due to less or no sugar – consumers can potentially avert "numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[2]

9.     As "sugar avoidance [is] a macro trend 'that is here to stay and will only increase,'" companies have sought to promote products with less sugar, because such products would necessarily have fewer calories.[3]

10.     Surveys confirm that a growing number of consumers are buying products with less sugar to decrease their caloric intake, and "85% are doing so for health reasons and 58% for weight concerns."

11.     Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food. *See* Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

12.     Representing a food or beverage as having zero or no calories is a nutrient content claim. 21 C.F.R. § 101.60(a).

13.     Congress required the FDA to develop and implement nutrient content claims to prevent consumers from being misled by the endless terms and descriptors on labels.

---

[2] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[3] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018

14. FDA regulations, adopted by Illinois, provide "general principles" for nutrient content claims, which are fleshed out in other regulations. 21 C.F.R. § 101.13; 21 C.F.R. §§ 101.54-101.69 ("Subpart D – Specific Requirements for Nutrient Content Claims").

15. The terms, descriptors and criteria for nutrient content claims were the outcome of dozens of meetings held by the FDA with consumers across the country.

16. Nutrient content claims for calories are intended to prevent consumers being deceived by labels which make representations about their calorie content that are not true. 21 C.F.R. § 101.60(b) ("*Calorie content claims.*").

17. Products that are labeled as "'no calories,' [or] 'zero calories," are permitted, provided certain criteria are met. 21 C.F.R. § 101.60(b)(1).

18. Specifically, a food must "contain[s] less than 5 calories per reference amount customarily consumed and per labeled serving" to be represented as "zero calories" or "no calories." 21 C.F.R. § 101.60(b)(1)(i).

19. Under FDA regulations, a product cannot be labeled or represented as having zero calories unless a standard serving has no more than five calories. 21 C.F.R. § 101.9(c)(1).

20. Otherwise, manufacturers could arbitrarily decrease the serving size so that it would contain less than five calories, and then advertise it as containing "zero calories."

21. Defendant relabeled the "zero calorie" product (left) as "diet" (right).



22.     The reference amount customarily consumed ("RACC") for non-carbonated beverages is 12 oz (360 mL).

23.     The 23-oz can of the Product is 192 percent of the RACC and meets the definition of a single-serving container. 21 C.F.R. § 101.9(b)(6).

24.     The Nutrition Facts of the "zero calorie" product (left) and "diet" product (right) differ in that the zero calorie version is listed with zero calories based on a serving size of 8 oz, while the updated diet version lists 15 calories.

4



25. The Nutrition Facts of the zero calorie and diet product correspond to the identical 23-oz product.

26. Plaintiff purchased the zero calorie version of the Product to get a product with zero calories.

27. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

28. The value of the Product that plaintiff purchased was materially less than its value as

represented by defendant.

29.    Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

30.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

31.    The Product is sold for a price premium compared to other similar products, no less than $1.49 per 23-oz can, higher than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

32.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

33.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

34.    Plaintiff Andrew Schrode is a citizen of Illinois.

35.    Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, Nassau County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

36.    Venue is proper because plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

Parties

37.    Plaintiff Andrew Schrode is a citizen of Hickory Hills, Cook County, Illinois.

38.    Defendant Arizona Beverages USA LLC, is a New York limited liability company with a principal place of business in Woodbury, New York, Nassau County.

39.     Defendant is one of the largest sellers of iced tea beverages in the country.

40.     Defendant's products, including the Product in this action, are sold to consumers by third-parties, available online and in almost every convenience store, grocery store, big box store, drug store within the nation, and in Illinois.

41.     Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including in 2020 and 2021, from stores including Walgreens, 8800 West 95th Street Hickory Hills IL 60457.

42.     Plaintiff relied on the label statements that the Product had zero or no calories.

43.     Plaintiff chose between Defendant's Product and other similar products which were represented as zero calories and *had* zero calories, instead of zero calories, but not containing zero calories.

44.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

45.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its capabilities and features.

Class Allegations

46.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

**Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

**Consumer Fraud Multi-State Class**: All persons in the States of Ohio, Texas, Virginia, Rhode Island, Delaware, and Florida, who purchased the Product during the statutes of limitations for each cause of action alleged.

47.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

48.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

49.    Plaintiff is an adequate representative because his interests do not conflict with other members.

50.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

51.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

53.    Plaintiff does not seeks class-wide injunctive relief because upon information and belief, Defendant phased out the zero calorie version of the product and renamed it "diet."

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

54.    Plaintiff incorporates by reference all preceding paragraphs.

55.    The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

56.    Plaintiff and class members desired to purchase a product which had zero calories.

57.    Defendant's false and deceptive representations and omissions are material in that

8

they are likely to influence consumer purchasing decisions.

58. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

59. Plaintiff relied on the representations.

60. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

61. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

62. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

63. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

Breaches of Express Warranty,<br>Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

64. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was had zero calories, when it did not have zero calories.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

66.     This duty is based on Defendant's outsized role in the market for this type of Product – a leading seller of ready-to-drink iced tea beverages.

67.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

68.     Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

69.     The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

70.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

71.     Defendant had a duty to truthfully represent the Product, which it breached.

72.     This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

73.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

74.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

75.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

76.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had zero calories when it did not have zero calories.

77.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities.

Unjust Enrichment

78.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Restitution and disgorgement for members of the class pursuant to the applicable laws;

3. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   December 22, 2021

                                                   Respectfully submitted,

                                                   Sheehan & Associates, P.C.
                                                   /s/Spencer Sheehan
                                                   60 Cuttermill Rd Ste 409
                                                   Great Neck NY 11021-3104

Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com